**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

**DAVID GROVES**
    Plaintiff

**v.**                                                                                                           **No. 1:05CV-64-J**

**JO ANNE B. BARNHART**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 9 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on October 27, 2004, by administrative law judge (ALJ) Thomas Bryan. In support of his decision denying Title II and Title XVI benefits, Judge Bryan entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's asthma, chronic obstructive pulmonary disease and acute bronchitis are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the following residual functional [capacity] to engage in sedentary work activity. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Due to respiratory difficulties, the claimant should avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1567 and 416.967).

11. The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.25, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled." The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is "not disabled," and retains the capacity to adjust to work that exists in significant numbers in the national economy, as contemplated in Section 200.00(b).

13. The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 21-22).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the

so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2;  20  C.F.R. §§ 404.1569a(d) and 416.969a(d);

5

*Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### The Plaintiff's First Contention

The plaintiff's first numbered contention is that "[a] finding of disability is required pursuant to the Sixth Circuit's holding in *Shelman v. Heckler*, 821 F.2d 316 (6th Cir., 1987)" (Docket Entry No. 9, p. 5). The present case was denied at the fifth and final step of the sequential evaluation process. No vocational expert (VE) testified at the administrative hearing. The ALJ found that "[t]he claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations." ALJ's Finding No.12. Accordingly, the ALJ based his decision upon a direct application of Rule 201.25 of Appendix 2 of the regulations. See Social Security Ruling (SSR) 96-9p (copy appended to Docket Entry No. 13), which authorizes a direct application of the Appendix 2 rules in such circumstances. Appendix 2 is also known as the medical-vocational guidelines, or grid. Grid Rule 201.25 contemplates a maximum exertional capacity for "sedentary" work.

In his written decision, the ALJ correctly identified the two prerequisites for a direct application of the grids such as occurred in this case, as opposed to utilization of vocational testimony, which is typically more closely tailored to a claimant's own specific limitations, to-wit (AR, p. 21) *(emphasis added)*:

> The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if [1] the claimant has the exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion (as defined in Social Security Ruling 83-10) **and [2] there are no nonexertional limitations.**

An exertional impairment is one that affects the claimant's ability to perform the seven strength demands of: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-9p. A nonexertional impairment is one that affects any other vocationally relevant ability. Hence, a pulmonary impairment resulting in environmental restrictions is a nonexertional impairment. *Shelman v. Heckler*, supra. If the claimant is found to have any significant nonexertional limitation, the Commissioner may rely on a particular grid rule only as a "framework for decisionmaking." See Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); and *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). "Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." *Shelman v. Heckler*. As noted above, the ALJ found that "[t]he claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations."

The plaintiff's primary medical basis in support of his claim of disability was "severe" respiratory disease. The plaintiff's treating respiratory specialist, Sanjay Chavda, opined that the plaintiff's respiratory limitations were sufficiently severe to render him unemployable. The ALJ acknowledged that the plaintiff suffers from "severe" asthma, chronic obstructive pulmonary disease and acute bronchitis. ALJ's Finding No. 3. The ALJ further found that "[d]ue to respiratory difficulties, the claimant should avoid even moderate exposure to fumes, odors, dusts, gases and

poor ventilation." ALJ's Finding No. 6. As noted above, respiratory limitations are nonexertional limitations. Therefore, the ALJ found nonexertional limitations to be present. The magistrate judge concludes that the second prerequisite for a direct application of the medical-vocational guidelines, as identified by the ALJ himself, was not present in this case. Furthermore, there was no reliable evidence that a need to avoid even moderate exposure to pulmonary irritants would not significantly limit the range of sedentary, unskilled work which the plaintiff might otherwise be able to perform. Hence, the ALJ erred in utilizing Grid Rule 201.25 to direct an unfavorable decision. At least, a remand for a new decision premised upon vocational testimony is required in this case.

### First Contention: The Appropriate Remedy

The plaintiff's position is that *Shelman v. Heckler*, supra, supports a judicial award of benefits. In *Shelman*, the Sixth Circuit remanded "with instructions to remand to the [Commissioner] for an award of disability benefits." Hence, *Shelman* was, in effect, a judicial award of benefits.

The magistrate judge concludes that the facts of the present case are quite similar to those presented in *Shelman*, to-wit:

1. In both cases, the Commissioner issued fifth-step denials based upon a direct utilization of the grids.

2. No vocational expert (VE) testified at the administrative hearings.

3. The Commissioner restricted both claimants to unskilled, sedentary work.

4. Both claimants were found to suffer from vocationally significant nonexertional pulmonary restrictions. In *Shelman*, the Commissioner limited the claimant to "settings relatively free of atmospheric pollutants and irritants." In the present case, Judge Bryan restricted the plaintiff

to "avoid[ance] of even moderate exposure to fumes, odors, dusts, gases and poor ventilation." The undersigned is unable to meaningfully distinguish the present case from *Shelman*. Therefore, the plaintiff has adequately demonstrated his entitlement to benefits.

### The Commissioner's Position as to the Proper Remedy

*Shelman* justified a judicial award of benefits, in part, as follows:

> The Secretary argues that the ALJ properly took administrative notice that there are a significant number of entry level sedentary jobs which could accommodate plaintiff's nonexertional limitations. To the contrary, "[a]pproximately 85 percent of the 200 unskilled, sedentary occupations that exist throughout the national economy are in the machine trades and bench work categories." ... 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a). "Machine trades and bench work by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments." *Thomas v. Schweiker*, 666 F.2d 999, 1005 n. 8 (5th Cir.,1982) (per curiam).... The ALJ's finding that a significant number of unskilled, sedentary jobs would not be ruled out by plaintiff's nonexertional limitations, which was made without citation of any authoritative references or any other evidence, was clearly in error.

In an effort to distinguish *Shelman*, the Commissioner takes the following position (Docket Entry No. 13, pp. 3, 5, and 7):

> The [*Shelman*] court based its holding on a prior case [of *Thomas v. Schweiker*, 666 F.2d 999 (5th Cir., 1982)] that had found many unskilled sedentary jobs ... by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to personal afflicted with respiratory ailments. ... Workplace conditions change over time, and the quality of work environments is not the same now as it was 23 years ago. The Commissioner has developed information indicating that a restriction against airborne contaminants does not necessarily preclude all sedentary, unskilled jobs.... [I]nformation developed for SSR 96-9p ... states, "Restrictions to avoid exposure to odors or dust must also be evaluated on an individual basis."

The magistrate judge concludes as follows:

1. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a) (2005 edition) continues to state, just as it did when *Shelman* was decided, that approximately 85 percent of the 200 unskilled, sedentary occupations that exist throughout the national economy are in the machine trades and bench work categories.

2. It remains as true as when *Thomas* was decided that machine trades and bench work by their nature typically involve exposure to dust, fumes, and other suspended particulates.

3. The "200 separate unskilled sedentary occupations ... each representing numerous jobs in the national economy" mentioned in SSR 96-9p and in the current version of the regulations (2005 edition) are the very same occupations noted in *Shelman* in 1987, in *Thomas* in 1982, and, indeed, in the Fourth Edition of the Dictionary of Occupational Titles (DOT) in 1977.

The magistrate judge concludes that, contrary to the Commissioner's argument, no new information has been "developed" by the Commissioner since *Thomas* was decided with respect to the occupational base for sedentary, unskilled work. On the contrary, it is a notorious fact that the Appendix 2 rules are based upon antiquated job data. Nor is it a recent occurrence following promulgation of SSR 96-9p, as the Commissioner implies, that VE testimony would be helpful where a need to avoid odors or dust is present. Accordingly, it is entirely possible that *Shelman* would have been decided differently if the ALJ had based his decision upon VE testimony.

Nevertheless, the fact remains that *Shelman* held, in effect, that, if the Commissioner chooses to utilize the Appendix 2 rules to deny benefits, the Commissioner is not entitled to a second bite at the apple by way of subsequently-obtained VE testimony. Instead, the proper scope of judicial review is pursuant to the same Appendix 2 rules and supporting job data which the Commissioner

10

opted to utilize in the first instance. The Commissioner's position is unpersuasive. Because *Shelman* remains good law in this circuit, the plaintiff has adequately demonstrated his entitlement to benefits.

## First Contention: A Survey of Other Recent Cases

The magistrate judge finds it noteworthy that, in two recent cases, counsel's law firm argued that *Shelman* dictates a conclusion of disability. In *Crawford v. Commissioner*, No. 5:04CV-234-J, the facts were similar to *Shelman* in that the Commissioner found that the claimant 1) suffers from a nonexertional pulmonary impairment and 2) is limited to unskilled work. Also like *Shelman*, the ALJ denied benefits based upon a direct application fo the grids in the absence of testimony from a vocational expert (VE) tailored to the claimant's actual restrictions. Unlike *Shelman*, however, the claimant was not limited to "sedentary" work but was found to have "the residual functional capacity to perform work without exertional limitation." We recommended a remand for a new decision and proper consideration of the claimant's nonexertional pulmonary impairment, including, if necessary, vocational testimony premised thereupon.

In *Stagner v. Commissioner*, No. 5:04CV-226-J, the facts were similar to *Shelman* in that the ALJ found that the claimant was limited to unskilled, sedentary work and suffered from a severe pulmonary impairment. However, unlike *Shelman*, the ALJ's denial decision was premised upon testimony from a VE that the claimant retained the ability to perform a significant number of unskilled, sedentary jobs that permitted "[n]o exposure to weather, extreme heat or cold or wetness and humidity [and] [n]o exposure to ... obnoxious fumes and odors." We recommended an affirmance of the Commissioner's final decision in light of the vocational testimony.

11

Unlike *Crawford* and *Stagner*, in the present case, we are unable to meaningfully distinguish *Shelman*. Hence, as in *Shelman*, we conclude that a judicial award of benefits is warranted.

### Other Contentions

Next, the plaintiff argues that "the evidence of record demonstrates that Listing § 12.05C has been met, thus warranting a finding of disability" (Docket Entry No. 9, p. 7). The plaintiff was born on July 14, 1963. Hence, at the time of the ALJ's decision on October 27, 2004, he was forty-one years old. The argument is premised upon IQ test results obtained in 1969, when the plaintiff was six years old, and in 1980, when he was sixteen years old. The magistrate judge concludes that these results do not satisfy the Listing because the Listing requires a current low adult IQ, and there is no evidence of current IQ. Hence, there was no reversible error.

Next, the plaintiff argues that "the administrative decision based on inadequate and insufficient vocational evidence" (Docket Entry No. 9, p. 11). The argument is premised upon *Shelman v. Heckler*. We have already concluded that the argument is persuasive.

Finally, the plaintiff argues that "the administrative law judge failed to properly evaluate Mr. Groves' depressive disorder" (Docket Entry No. 9, p. 13). The argument is premised upon medical records from Pennyroyal Mental Health in 2004, showing that the plaintiff was diagnosed with "major depressive disorder, single episode, moderate" (AR, pp. 247 and 249). The ALJ found that the condition did not satisfy the "severity" and "durational" requirements of a disabling impairment as follows (AR, p. 19):

> In May 2004, [in a] follow-up visit, the claimant was noted to be taking his medication on a regular basis with no complaints of side effects. He reported that since his medication was increased, his mood had significantly improved and denied any present problems with depression (Exhibit 10F). Therefore, the undersigned concludes that even though the claimant may have occasional bouts of depression, this condition would not significantly interfere with his ability to engage in basic work activities and is a "non-severe" impairment.

The magistrate judge concludes that the ALJ's decision in this regard was supported by substantial evidence.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due benefits based upon his applications for Title II and Title XVI benefits filed on or about August 27, 2003, and alleging a disability onset date of July 27, 2003.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and an enlargement of the prescribed period for cause shown pursuant to Fed.R.Civ.P. 6(b), the prescribed period for filing objections to the foregoing report, after adding three (3) days to the prescribed period pursuant to Fed.R.Civ.P. 6(e), shall be fifteen (15) days from the date of notice of electronic filing of the right to file written objections to the foregoing report with the Clerk of Court.  Pursuant to Fed.R.Civ.P. 72(b) and an enlargement of this prescribed period for cause shown pursuant to Fed.R.Civ.P. 6(b) and after adding three (3) days to the prescribed period pursuant to Fed.R.Civ.P. 6(e), any party may file a response to another party's objections to the foregoing report within fifteen (15) days of being served with said objections.  The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).